**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent,** | ) | |
| | ) | **Case No.  1:93-CR-00460-CMI-1** |
| | ) | |
| **v.** | ) | **Hon. Claude M. Hilton** |
| | ) | |
| **JAMES KIRBY BURKS, JR.** | ) | |
| **Petitioner.** | ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT
JAMES KIRBY BURKS JR.'S MOTION FOR A REDUCTION OF HIS LIFE
SENTENCE PURSUANT TO SECTION 404(b) OF THE FIRST STEP ACT**

> *After reviewing the defendant's motion and underlying case file, **the
> United States would be willing to endorse a reduction in the
> defendant's sentence to one of less than life imprisonment**,
> specifically, 360 months, **were such a reduction permissible under
> law** [Amendment 782].*

Dkt. #119 at 1. December 6, 2019 Response of the United States to Mr. Burks's June 8, 2016 §

3582(c)(2) Motion to for Reduction of Sentence Based on Amendment 782 (emphasis supplied).

Mr. Burks has served over 28 years of his Life sentence in federal prison. Even the

Government's prior endorsement of a sentence reduction to 360 months' imprisonment, would

deem Mr. Burks eligible for immediate release. Mr. Burks asks this Honorable Court to grant him

relief based on the available remedies under Section 404 of the First Step Act and sentence him to

time served, permitting immediate release.

**I.  INTRODUCTION**

Mr. Burks's path to a mandatory life sentence began in 1991 when he was just 23 years

old. Two years later, in 1993, at the age of 25, the Government charged Mr. Burks with: conspiracy

to possess with intent to distribute 50 grams or more of crack cocaine, and to distribute 50 grams, Count One; and engaging in a continuing criminal enterprise ("CCE"), Count Two, between November 1991 and November 1993. After the jury convicted Mr. Burks on both counts, the Court sentenced Mr. Burks to life sentences on both counts.

The Fourth Circuit affirmed Mr. Burks's CCE conviction and sentence, but it remanded for dismissal Mr. Burks's conspiracy charge conviction. For almost thirty years, Mr. Burks's Life sentence for the CCE conviction has remained intact. Mr. Burks, who was 25 at the time he was sentenced to mandatory life, is now 53 years old and has served over 28 years in prison. Mr. Burks has spent over half his life in federal prison.

America's crack cocaine sentencing guidelines have changed significantly during Mr. Burks's 28 years of incarceration. Most recently, Section 404 of the First Step Act of 2018 authorized district courts to reduce crack sentences when the statutory penalty provisions of the Fair Sentencing Act (FSA) would have applied had the FSA been in effect at the time of the original sentencing.

Just as our drug policies have evolved over the years, so too has James Kirby Burks. The 20 letters that Mr. Burks attached in support of his *pro se* Section 404 Motion demonstrate that, even with no certainty that he would ever leave prison, Mr. Burks has woken up every day for 28 years and chosen to not give up on himself and to do the right thing. Mr. Burks's support further demonstrates his earnest contrition and that he has a community safety net that awaits his release. The letters include words of support from former teachers, friends, family members, and members in the community who all create a picture of a Mr. Burks before and after the two years that he sold drugs.

Mr. Burks's Letters of Support attached to his *pro se* 404 Motion tell the story of a talented Mr. Burks who excelled in academics and athletics. After graduating with Honors from high school and excelling at football, Mr. Burks attended Howard University where he majored in electrical engineering.

During his sophomore year of college, Mr. Burks's mother died after a long battle with cancer. At this point, Mr. Burks's distractions led him down a path where, for two years, he made mistakes that he has spent the last 28 years in federal prison paying for. The attached letters, support from Mr. Burks's community, Mr. Burks's achievements, Mr. Burks's acceptance of responsibility, Mr. Burks's re-entry plan, the Government's prior endorsement of a reduced sentence, and now, supporting case law, all demonstrate that Mr. Burks deserves a second chance at life outside of prison walls.

For these reasons, and as further explained below, DEFENDANT JAMES KIRBY BURKS, JR. by his counsel ADAM CARROLL, and appearing Pro Hac Vice, (pending) TRACY N. DACRUZ and MIANGEL CODY, hereby supplements JAMES KIRBY BURK's December 6, 2019 MOTION FOR REDUCTION OF SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 (Dkt. # 130 - 130-3) and respectfully move that his life sentence for Count Two be reduced to 360 months' imprisonment, pursuant to Section 404(b) of The First Step Act, which would result in Mr. Burks's immediate release.

## II.    THE FACTS

### A.    Mr. Burks's Conviction And Life Sentence

On December 21, 1993, a grand jury returned a two-count indictment, charging Mr. Burks with: conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, and to

distribute 50 grams or more of crack cocaine, Count One; and engaging in a continuing criminal enterprise (CCE), Count Two.

On March 9, 1994, a jury convicted Mr. Burks of both counts.  At sentencing, Mr. Burks's base offense level was calculated at 42 for more than 15 kilograms of crack cocaine.  Mr. Burks's offense level was enhanced two levels for use of a firearm, and four levels for his role in the offense.  Mr. Burks's guideline range was mandatory Life, and accordingly, this Court sentenced Mr. Burks to life imprisonment.

On appeal, the Fourth Circuit affirmed Mr. Burks's CCE conviction, but reversed and remanded for dismissal the conspiracy count.  *United States v. Burks*, 85 F.3d 617 (4th Cir. 1996).  This Court vacated Count One and resentenced Mr. Burks to Life imprisonment on the CCE count, followed by five years' probation. Dkt. #100, 101.

Thereafter, Mr. Burks unsuccessfully moved for § 2255, § 2244, Amendment 706, and Amendment 782 relief.   Dkt. #73, 88, 97, 105.

Notably, in Response to Mr. Burks's Amendment 782 motion, the Government endorsed a sentence reduction but could find no legal grounds where Mr. Burks would be eligible for relief:

> *After reviewing the defendant's motion and underlying case file, **the United States would be willing to endorse a reduction in the defendant's sentence to one of less than life imprisonment**, specifically, 360 months, **were such a reduction permissible under law**.  Having consulted with counsel for the defendant and having considered whether any lawful mechanism exists to reduce the defendant's sentence; however, the United States has determined that no authority exists for the United States to support or for the Court to order a reduction in the defendant's sentence. Accordingly, the United States must oppose the defendant's motion.*

 Dkt. #119 at 1. December 6, 2019 Response of the United States to Mr. Burks's June 8, 2016 § 3582(c)(2) Motion to for Reduction of Sentence Based on Amendment 782 (emphasis supplied).

Now, Mr. Burks submits that this Court has the authority to reduce his sentence pursuant to Section 404 of the First Step Act.

**B.      Background: Mr. Burks's Life Before His Arrest Through The Nearly Three Decades Of His Life Sentences That He Has Served In Federal Prison.**

**1.      Mr. Burks's Young Adult Life and Achievements Prior to His Arrest: A Young Man Who Excelled in Academics, Shined as a Football and  Track Athlete; and Served as a Mentor to Family Members, Fellow Students, and Young Athletes.**

*Needless to say, this situation with Mr. Burks angered me and has somewhat perplexed me because of all my students, I noticed that he had an abundance of potential and the opportunity to do great things if he had become focused and put his mind to it . . . .* ***While his life has taken a detour, he is still that type of man****. A[n] [Archbishop] Carroll [High School] man, who can turn it around and become someone whom we acknowledge as an irrefutable man of the ages.* ***It truly displeases me to know that someone with so much potential might be locked away for the rest of his life without having the opportunity to erase some of the mistakes of the past****.*

Dkt. #130-3 at 25-26. Letter of Support from Carroll Holmes, Student Advocate, Prince George County Public Schools (emphasis supplied).

The many years before and after the two years that Mr. Burks sold crack cocaine demonstrates that Mr. Burks is a talented, intelligent, and exceptional man whose two years of making the wrong decisions cost Mr. Burks his freedom for the rest of his life.

Mr. Burks grew up mostly in Washington D.C. with his two sisters. After his parents divorced, Mr. Burks divided his time between his father's home and his mother's home.  Mr. Burks was an exceptional son, brother, and student. Mr. Burks's sister, Rhonda, explains in her Letter of Support:

*[James Burks] is the middle child of the late James K. Burks, Sr., and Audrey W. Burks. My parents believed in building what they called a foundation for the three of us which included teaching us how to love ourselves, to love one another, to provide us with a good Christian upbringing and they sure made sure we received the best education money could buy. James excelled academically during all his*

*years in school and by the time he entered high school, James was a member of the National Honor Society.  He also excelled in sports (just like his father) including track and field (attending the Penn Relays several times), football, and softball. We live in an area where the drop out rate is at least 50%, our parents made sure that we all graduated from high school and all attended college.*

Dkt. #130-3 at 41.

  

*--Childhood photos of Mr. Burks and photos with his family.*

Mr. Burks excelled in academics and athletics throughout his school years.

 

*--Copies of Junior Citizen and Athletic Awards that Mr. Burks received in school.*

Mr. Burks attended Archbishop Carroll High School where he excelled in academics and

athletics. Mr. Burks played football and ran track, and he was a model student.  Former Teacher

Carroll Holmes writes in his Letter of Support about what a exceptional student and person Mr. Burks was in high school:

> *While I was a faculty member at Archbishop Carroll High School, I had the privilege of teaching James Kirby Burks, Jr. As Head Basketball Coach and Athletic Director at Carroll, I had ample opportunities to interact with the petitioner. During his tenure, there were many things about the young man that made a lasting impression on me. One of the first was his aptitude and ability to adapt. From the onset, he proved to be a capable student who was able to mix with the rest of the student body while performing admirably in the classroom and on the ball field. However, the most endearing quality that I notice[d] in him was his willingness to smile and to make others do the same.*

Dkt. #130-3 at 25.

Mr. Burks also attended high school with Troy L. Weaver, who was the Assistant General Manager for the Oklahoma City Thunder and is currently the Assistant General Manager for the Detroit Pistons. In his Letter of Support, Mr. Weaver explains how Mr. Burks was a friend to everyone and a uniter:

> *I first met the petitioner, James Kirby Burks, Jr., in the fall of 1982 during our freshman year of high school at Archbishop Carroll, and from the moment that I met him, my senses told me that he bore watching. Needless to say, those senses did not let me down.*
>
> *             \*                    \*                    \**
>
> *One of the first things to grab my attention about him was his magnetism. I didn't know what it was then, but he displayed an uncanny ability to pull people together, and not just certain groups of people, but also a mixture of everybody. The biggest gathering lunch period was always where Kirby sat. There would literally be a crowd of people sitting at his table that was comprised of a sampling of the whole class. There would be jocks, bookworms, class clowns, introverts, and the most outgoing people sitting with him, and everybody seemed to get along.*

Dkt. #130-3 at 46.

Mr. Burks's close friend since early childhood, Garicka Tyree, discusses Mr. Burks's academic excellence in his Letter of Support:

*James and I attended school together from elementary school through our freshman year at Howard University. During that time, I never met a more self-motivated, dedicated, and disciplined student than James. Throughout high school, he was known for getting up at 4:00 o'clock in the morning to complete homework assignments and study for tests. His hard work and sacrifices paid off. After our freshman year in high school, he advanced from the second-tier class/curriculum to the first-tier class, which included Advanced Placement courses. Additionally, he made the honor roll nearly every advisory period. I noticed then, and still marvel, at how he motivated himself to obtain his goals, with very little parental prodding. He is simply a highly self-motivated and intensely committed person. He applied that same dogged determination in just about everything that he pursued, whether it was academics, sports or life, in general.*

Dkt. #130-3 at 36-37.



*--- Mr. Burks's high school graduation photo. Mr. Burks graduated high school with Honors.*

Mr. Burks graduated with Honors from high school, ranked number 18 in his class of 126 students. PSR ¶110. Mr. Burks's academic excellence did not end in high school.

After graduating high school with Honors, Mr. Burks attended Howard University where he majored in electrical engineering.  PSR ¶111, 114. Mr. Burks wanted to play football for Howard University. However, he would not have an opportunity to walk-on to Howard's football team until Spring of 1987.  Determined to pursue his passion for football, Mr. Burks sent a highlights tape to Bakersfield State.  Recognizing Mr. Burks's talent, Bakersfield State offered Mr. Burks the opportunity to play football, run track, and graduate with a degree. Having the

opportunity to pursue his academic and athletic passions, Mr. Burks transferred to Bakersfield State in California where he continued to do well academically, played football, and ran track. PSR ¶113.

While Mr. Burks was succeeding academically and athletically in college, his mother was suffering from cancer.  It was at a State track meet that Mr. Burks learned that his mother had passed away. Mr. Burks was only 19 years old.  His mother was only 39; she did not live to see the age of 40. Mr. Burks left Bakersfield State without having the opportunity to finish competing in the State track meet.  Mr. Burks left with the intentions of returning and completing his semester and final exams.  However, the loss of his mother affected Mr. Burks to the point that he did not return to Bakersfield State, and Mr. Burks's path changed.

Mr. Burks made decisions that have forever affected his life as he has now spent nearly three decades of a Life sentence in federal prison.

### 2. The Pivotal Moment in Mr. Burks's Life:  His Mother's Cancer Diagnosis and Subsequent Death from Cancer.

Mr. Burks's outlook on life changed drastically after the death of his mother. As his cousin, Teresa S. Jackson explained in her letter of support:

> *Throughout his scholastic and academic careers, Kirby made everyone in the family proud. He carried huge expectations with him into the future once he graduated high school. Unfortunately, those expectations weren't quite met. In 1988, Kirby lost his mother to cancer. While he appeared to be all right in the eyes of many, I could tell that the effects of her loss were having a significant toll on him.  It is not by accident that many of his legal troubles coincided with that loss. The hard truth is that Kirby not only lost his mother, but his innocence too. I felt helpless as I sat back and watched him cope with his loss and pain.  I knew there was nothing that I could do to help him or at least save him from himself.*

Dkt. #130-3 at 6-7.

When reviewing Mr. Burks's three prior offenses, they occurred all within six months of his mother's death in May 1988.  *See* PSR ¶¶ 92, 93, 95.

9

In the letter of support written by Mr. Burks's childhood friend, Macavoy Tyree, Mr. Tyree further explains how Mr. Burks continued down this path that led to his Life sentence after the loss of his mother:

> *Kirby is a man who was raised to respect and cherish family. Education was a priority in his upbringing. His parents made great sacrifices to send him and his sisters to Catholic schools from the 1st through the 12th grades. This is where he first excelled, achieving the highest levels in academics. He took great pride in always being among the brightest and most accomplished in his classes. After graduating with honors from high school, he then attended Howard University where he was in the school of engineering. From my perspective, it was during this time that Kirby became distracted. His mother became gravely ill with breast cancer and underwent both chemotherapy and radiation. Despite her treatment, she died during Kirby's sophomore year in college.* **It appeared to me that he then assumed responsibility for the support of his family while he and his two sisters all attended college. I suspect this led to a decrease in his focus and ultimately his involvement in unproductive activities.**

Dkt. #130-3 at 34 (emphasis supplied).

Mr. Burks's sister Robin further discusses in her Letter of Support about how Mr. Burks felt obligated to take care of the family after his mother died:

> *After our mom passed, he felt even more responsibility for lifting the spirits of our family. Although his methods were questionable, his intentions were good. He always wanted to make sure that we were safe and secure. He sacrificed his life and his freedom to provide others and me with their dreams. That doesn't excuse what he did in any form, but it speaks to the nature of man and the goodness that dwells within him . . . . He has a clear understanding that he made mistakes in his youth, but he deserves a chance at redemption.*

Dkt. #130-3 at 46.

### 3.      Mr. Burks's Arrest, Convictions, and Life Sentence

Mr. Burks takes responsibility for his conduct in the early 1990s that led to his arrest and life sentence in federal prison. Mr. Burks admits that he made mistakes selling drugs with the reasoning that he would make fast money to help support his family, stop selling drugs, invest in real estate, and become a football coach.

Mr. Burks's legitimate goals are even evidenced through the Letters of Support.   Mr.

Burks's friend, Terrence Brown, a real estate broker/developer writes in his Letter of Support about

how Mr. Burks took an interest in real estate:

> *Prior to his arrest, Kirby and I had the opportunity to work together during a real estate transaction. I found him to be knowledgeable, easy to work with, and capable of finding a profit where others only saw ruin or lack of opportunity.  His vision and resourcefulness are wonderful assets that translate in the real estate and real estate development business in general.*

Dkt. #130-3 at 23.

Mr. Burks's high school athletic advisor and teacher, Carroll Holmes, writes in his Letter

of Support about how Mr. Burks contacted him and sought guidance on becoming a high school

football coach:

> *In 1992, he approached me about becoming involved with the varsity football team because he had aspirations of one day becoming the head football coach at [Archbishop] Carroll [High School], and I was elated about that. I thought that he had found his calling, and I was eager to help him realize his dream. Unfortunately, life had other plans for him, but I never doubted for one moment that he would have become someone for whom I would be performing another service. I would love to have had the honor of delivering his introduction into the Washington DC Sports' Hall of Fame. That is the kind of potential that I recognized in Burks, and that is why I am willing to write this letter of recommendation for him.*

Dkt. #130-3 at 25-26.

Mr. Burks's former classmate, Troy Weaver, Assistant General Manager of the Detroit

Pistons, writes in his letter of support about how Mr. Burks volunteered to coach and mentor young

football athletes prior to his arrest:

> *[I]n the late summer of 1993, I got a call from my old friend [Mr. Burks]. He was looking to break into the coaching ranks and offer to assist me with my Boys Club team. At the time I was working at the Prince Georges County recreation department, Columbia Park facility. . . . . [A]s was often the case, we were short on staff. So Kirby's offer was like a godsend, and I was so enthused that I offered to provide him with transportation both ways for the duration of the season. Of course, he just laughed it off in his usual manner and told me that he'd be there for the first*

*day of practice. Sure enough, when practice began, he was there and remained for the duration of the season, providing excellent tutelage, leadership, and advice to a group of young men who truly needed it. He even went so far as to provide some of the older, less fortunate guys on the 125 pound team with cleats and equipment. That was really going above and beyond the call of duty, but the thing that really got me was when I learned that he could have taken a similar position with many of the other area high schools, which were willing to pay him for his time. Instead of going with them, he honored his word and stayed with us. I for one was especially happy that he did.*

Dkt. #130-3 at 20-21.

At the time that Mr. Burks was arrested, he was in a relationship with the mother of his son, Kimberly Coates.  PSR ¶100.  They had known each other since First Grade, and Ms. Coates was pregnant with their son.  PSR ¶104.  Mr. Burks's son, Marcus was born in 1994, just six weeks after Mr. Burks's arrest. PSR ¶104.

At the time of Mr. Burks's arrest, Ms. Coates was concerned about raising a fatherless son. PSR ¶106.  Ms. Coates's concerns and fears came to fruition. Mr. Burks's son, Marcus, has never seen him outside of prison walls.



*--Photo of Mr. Burks's son who was born weeks after his arrest.*

As Mr. Burks's son, Marcus, writes in his letter of support:

Unlike all my classmates and friends, my upbringing was unique due to my father's incarceration. I was not fortunate to have the luxury of experiences that a son has

with his dad such as learning how to ride a bike, playing catch, or even the experience of having my father take me to school.

*          *          *

As I continued to get older, our relationship grew even stronger.  Jovial juvenile talks have now turned into conversations surrounding which university I will attend and when will I have my degree completed. It was very beneficial to receive his advice, but it was extremely painful for me to complete these milestones and not experience any of them with my father. I was neglected from celebrating those milestones with my father which has left a permanent scar on my life.

*See* Letter of Marcus Burks, Attached as **Exhibit A**.

       **4.**       **Mr. Burks's Life Spending Life in Prison**

**Life**

*A crust of bread and a corner to sleep in,*
*A minute to smile, and an hour to weep in.*
*A pint of joy to peck of trouble*
*And never a laugh, but moans come double.*
*And, that is life.*
*A crust and a corner that makes love precious,*
*With smiles to warm, and tears to refresh us.*
*And cares seem sweeter when joys come after,*
*And a moan is the foils for laughter.*
*And, That is Life!*

By Paul Lawrence Dunbar- Mr. Burks's favorite poem.

     Mr. Burks was 25 years old when he was sentenced to life, and he is now 53 years old.

Mr. Burks spent the last half of his twenties, all his thirties, all his forties, and now the beginning

of his fifties in federal prison for the mistakes he made for two years between 1991 and 1993.



*- Mr. Burks's prison visitation photos with family and friends over the decades.*

For the past 28 years, Mr. Burks has done all that he can in prison to better himself in the hopes that, someday, he will have the opportunity to have a life outside prison walls. Mr. Burks wants to succeed professionally, be a law-abiding productive member of society, a mentor to others, a pillar in his community, a part of his family again, and a father to the son he never had the opportunity to raise or have a relationship with outside of prison walls.

Mr. Burks admits that, in his early years in prison, he received multiple disciplinary reports. However, as evidenced by his IRP, Mr. Burks has not had a DR in over eight years since 2013. Dkt. 130-1 at 10.

While incarcerated, Mr. Burks has completed numerous certifications and programs, including rehabilitation courses, such as:

Drug Abuse Education;

Criminal Thinking;

Defining the Issues of a Problem;

Managing Conflicts;

Recognizing and Managing Anger;

Parenting; and

Cultural Studies I

*See* Certificates, Attached as **Exhibit B**.

Mr. Burks has also completed multiple courses that will assist him in obtaining gainful employment upon his release and fulfill his goal of eventually opening his own business. Those courses include:

Planning and Controlling Budgets;

Personal Finance Planning;

Introduction to Personal Computers;

Auto Sales;

Marketing; and

Men S.T.O.P. Retail Business

*See* Certificates Attached as Exhibit B.

### E.    Mr. Burks's Visions of Life and Goals Outside Prison Walls

As the perspectives on crack cocaine sentencing have changed, so has Mr. Burks's perspective.   Mr. Burks professes that he is no longer the person who sold narcotics to make money. Mr. Burks has explained that back then, he looked at the world in a way where he would ask, "how can the world make my life better?"   After nearly three decades in federal prison, he now asks, "How can I make the world better?"

As Mr. Burks expressed in his *pro se* 404 Motion:

Petitioner prays that the court considers the fact that Petitioner has served twenty-six years [as of the December 6, 2019 filing] of a life sentence and that he is no longer the twenty-five-year-old who stood trial before the court in the early '90's. Petitioner is a remorseful, mature man, who recognizes his misgivings and fully intends to make amends for them once he is able to rejoin society.  In that regard, Petitioner's release would not simply be a blessing for him, but it will surely prove

to be a blessing for society and the world because Petitioner is sincere in his intentions to be an asset to his community and those whom he will be allowed to affect.

Dkt. 130 at 14.

Mr. Burks is now a mature adult who wishes that, in 1991, he saw the potential that so many others saw in him.  Mr. Burks wishes that he would have had the faith to realize that his academic intelligence, engaging personality, savviness, and athletic talent would have led him to securing a legitimate successful profession and life.

Despite his IRP release date currently reading, "LIFE," Mr. Burks has goals and visions for his life outside prison walls.  Mr. Burks wants to obtain his commercial driver's license and eventually open his own trucking business. Being opportunistic, Mr. Burks hopes to seize opportunities that may come available from the Infrastructure Bill.

As evidenced through the Letters of Support attached to Mr. Burks's pro se motion (Dkt. #103-3), Mr. Burks has family and friends who are all willing, able, and ready to support his transition back into the community he left over 28 years ago.

Mr. Burks's friend, Troy Weaver, who is the Assistant General Manager of the Detroit Pistons, has remained supportive throughout the years.  Mr. Weaver has provided Mr. Burks guidance and has offered to continue to provide Mr. Burks moral support and advice about transitioning into society and finding legitimate employment.

Mr. Burks's friend, Terrence Brown, a real estate broker/developer, has offered to provide Mr. Burks with employment and living arrangements if he were released:

> *If needed, I would be inclined to extend my hand to him upon release and offer an opportunity in the real estate field where he showed promise many years ago. Additionally, upon release, if Kirby needs shelter, I have apartment units where he can reside.*

Dkt. #130-3 at 23.

16

Mr. Burks's childhood friend, Macavoy Tyree, who also served time in federal prison, has no doubt that Mr. Burks will succeed if released from prison. In his letter of support, Mr. Tyree writes:

> I was incarcerated for eight and a half years in the United States Bureau of Prisons, carried out my time and rejoin society to become a productive member. I understand the error of my ways and have diligently worked to change my thinking so that I would never make such mistakes again. Since reentering society, one of my greatest accomplishments was obtaining a Bachelor of Science degree in accounting while sending my daughter to college the same year. I have not been rearrested, accused or even suspected of committing any offence and have not even received a traffic infraction since my release.
>
> Just as I have made these changes, so will Kirby. I am confident that he is fit to rejoin society and make positive contributions. For 40 years, I have known Kirby and the one thing I can say about him is that he is not one who takes opportunities lightly. If given another chance to be among his family, he will treasure it and protect it with all that he has.

Dkt. #130-3 at 35.

Considering the Government's prior endorsement of a reduced sentence, and now, supporting case law to support a reduced sentence as set forth below, Mr. Burks humbly asks this Honorable Court to reduce his sentence to time served.

### III. THE LAW

### A.   The Fair Sentencing Act of 2010

On August 3, 2010, Congress enacted, and the President signed into law, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), to address the longstanding and widespread recognition that the 1986 Anti-Drug Abuse Act's penalty scheme for crack offenses was based on false assumptions, unjustifiably punished crack offenders far more harshly than other similarly-situated drug offenders, and had a disproportionate impact on African Americans. *See Dorsey v. United States,* 567 U.S. 260, 268-69 (2012); *Kimbrough v. United States,*

552 U.S.C 85, 96-98 (2007). Section 2 of the Fair Sentencing Act modified the statutory penalties for violations of 21 U.S.C. § 841 involving crack by increasing the weight ranges to which § 841(b)'s statutory penalties apply.

However, the Fair Sentencing Act was not made retroactive. The Supreme Court later held that sections 2 and 3 of the Act applied to defendants who committed a crack offense before August 3, 2010, but only if they were sentenced on or after that date. *See Dorsey,* 567 U.S. at 282. This left thousands of people in prison serving unduly harsh sentences that had been imposed under the old law.

To rectify the problem, in late December 2018, Congress enacted, and the President signed into law, the First Step Act of 2018, § 404 of-which made sections 2 and 3 of the Fair Sentencing Act retroactive. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (codified at 21 U.S.C. § 841). Under the Act, "Congress authorized the courts to provide a remedy for certain defendants who bore the brunt of a racially disparate sentencing scheme." *United States* v. *Chambers,* 956 F.3d 667, 674 (4th Cir. 2020).

### B.    The First Step Act of 2018

The First Step Act of 2018 legislatively authorized district courts to reduce pre-FSA crack penalties retroactively for "covered offense[s]." Specifically, § 404(a) of the First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then states: "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court impose a reduced sentence as if

sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Section 404 provides that "[a] court that imposed a sentence for a covered offense may," on motion, "impose a reduced sentence as if sections 2 and. 3. of the Fair Sentencing Act ... were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b). A "covered offense" is defined as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act ... , that was committed before August 3, 2010." *Id.* § 404(a).

Courts are precluded from entertaining a motion "made under this section" in only two circumstances: (1) if the sentence was "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act," or (2) if a "previous motion made under this section" was "denied after a complete review of the motion on the merits." Pub. L. No. 115-391, § 404(c). Finally, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id*

With this language, Congress intended that every defendant sentenced for a crack offense before the Fair Sentencing Act's date of enactment, who is still serving that sentence, would be eligible for imposition of a reduced sentence after individualized consideration on the merits. As summarized by its bipartisan sponsors:

> This Section allows prisoners sentenced before the Fair Sentencing Act of 2010 reduced the 100-to-1 disparity in sentencing between crack and powder cocaine to petition the court for an individualized review of their case. This reform would bring sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed.

S. Comm. on the Judiciary, 115th Cong., The First Step Act of 2018 (S.3649) - as introduced by Senators Grassley, Durbin, Lee, Whitehouse, Graham, Booker, Scott,, Leahy, Ernst,

Klobuchar, Moran, and Coons (Nov. 15, 2018), https://www.judiciary.senate.gov/download/revised-first-step-act_-summary (last accessed Nov. 29, 2021).

If a defendant is eligible, the district court decides in its discretion whether, and to what extent, to impose a reduced sentence.   In doing so, the court considers the applicable statutory limits, the advisory guideline range, and the § 3553(a) purposes and factors, including the need to avoid unwarranted disparities between defendants "with similar records who have been found guilty of similar conduct," and the defendant's post-sentencing conduct.

Based on the Government's prior endorsement of a sentence reduction in Mr. Burks's case, the §3553(a) purposes and factors, and Mr. Burks's post-sentencing conduct, Mr. Burks respectfully requests that this Court exercise its discretion and grant him a sentence reduction.

## IV.   MR. BURKS IS ELIGIBLE FOR A SENTENCE REDUCTION PURSUANT TO SECTION 404(B) OF THE FIRST STEP ACT.

### A.   The Government's Prior Endorsement for a Sentence Reduction in Mr. Burks's Case.

As discussed *supra*, in Response to Mr. Burks's Amendment 782 motion, the Government endorsed a sentence reduction to 360 months.  Dkt. #119 at 1. However, the Government noted that it could not find any legal grounds (under Amendment 782) where Mr. Burks would be eligible for relief.  *Id*. Fortunately, the First Step Act presents the appropriate procedural vehicle for relief.

### B.   Because the Underlying "Series of Violations" for Mr. Burks's CCE Offense Are "Covered Offenses," His Violation of the CCE   Statute Is Also a "Covered Offense".

In Mr. Burks's case, a jury convicted him in Count One, conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, and to distribute 50 grams; and Count Two, engaging in a continuing criminal enterprise ("CCE") based on those crack cocaine offenses.

20

Thereafter, the Fourth Circuit reversed for dismissal his crack cocaine convictions in Count One, leaving intact only his CCE conviction. The question presented here is whether Mr. Burks's CCE conviction pursuant to 21 USC § 848 is a "covered offense" for purposes of the First Step Act.

A defendant is "eligible to seek relief under ·the First Step Act" if "'before August 3, 2010," he 'committed' a 'violation' of [a federal criminal statute], and 'the statutory penalties' for that statute 'were modified by' Section 2 of the_ Fair Sentencing Act. "*United States v. Wirsing,* 943 F.3d 175, 186 (4th Cir. 2019) (quoting § 404(a)).

Eligibility therefore does not depend upon whether the Fair Sentencing Act altered a "statutory penalty range," or even whether the statutory penalties applied to a defendant would have been different under the Fair Sentencing Act. *See United States v. Woodson,* 962 F.3d 812, 816 (4th Cir. 2020) (observing that under Fourth Circuit precedent, "the relevant change for purposes of a 'covered offense' under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction, not a change to a defendant's particular sentencing range as a result of the Fair Sentencing Act's modifications").

As defined by § 404(a), a "covered offense" is simply a "violation of a Federal criminal statute, the statutory penalties for which were modified" by the Fair Sentencing Act.  Violations 21 U.S.C. § 84l(b)(l) and 21 U.S.C. § 848 involving cocaine base meet that definition.

Here, in Mr. Burks's case, Count Two charged a continuing criminal enterprise (CCE) violation pursuant to 21 USC § 848.  Section 848(c) provides that a person engages in a "continuing criminal enterprise" if he ***"violates"* any felony "provision of this subchapter"** (***i.e.*, 21 U.S.C. §§ 801-865)** and "such *violation"* is (1) part of "a continuing series of violations of this subchapter" (2) in concert with five or more other people, (3) with respect to whom the person has a management role, and (4) the person obtains substantial income from the enterprise. 21 U.S.C. § 848(c). *Richardson v. United States,* 526 U.S. 813, 820 (1999).

21

Therefore, to prove a violation of the CCE statute, the Government must establish beyond a reasonable doubt that the defendant engaged in a "series of violations" of other drug laws set forth in the same subchapter of Title 21.

Mr. Burks's CCE charge and conviction was expressly predicated upon violations of 21 U.S.C. § 841(a)(l) and 846 involving cocaine base in Count One of his Indictment. Because the underlying "series of violations" for Mr. Burks's CCE conviction are "covered offenses," his CCE conviction is also a "covered offense."

The Fourth Circuit reversing for dismissal Mr. Burks's conviction in Count One for the crack cocaine offenses, in violation of 21 U.S.C. §§ 841and 846 does not preclude Mr. Burks from First Step Act relief because the drug charge was a lesser-included offense to Mr. Burks's CCE conviction. *Cf United States v. Hall,* No. 2:93-cr-162-RAJ-1, ECF Doc. 860, at 9-10 (E.D. Va. Mar. 2, 2020) (holding that violation of § 848(a) and (c) is "covered offense" because provisions pursuant to which defendant was convicted reference § 841 and § 846 and because "the essence" of defendant's § 848 conviction "involved [his] trafficking of crack cocaine")*; United States* v. *Burrell,* 2020 WL 5014783, at *2 & *8 (E.D.N.Y. Aug. 25, 2020) (noting that defendant's § 846 conviction was vacated as lesser-included offense of§ 848(a) conviction and declining to allow that vacatur "now- by virtue of having eliminated an undisputed "covered offense" from his conviction profile - [to become the saboteur of the first substantive opportunity [defendant] has had for relief from a crack-quantity-based life sentence - a sentence that, for two decades, has been on the wrong side of significant changes in federal sentencing law").

Consequently, Mr. Burks's CCE conviction was plainly based upon "violations" of 21 U.S.C. § 841 and § 846 (involving crack cocaine) that the Government was required to prove beyond a reasonable doubt to a jury at trial to obtain a CCE conviction. The statutory penalties

for those federal criminal statutes (§ 84l and § 846) were modified by § 2 of the Fair Sentencing

Act. Therefore, based upon the plain text of § 404(a), a "covered offense" includes violations

of the CCE statute.

Accordingly, Mr. Burks's CCE conviction is a "covered offense" for purposes of the

First Step Act.

### C.    Other Defendants in the Eastern District of Virginia with CCE Convictions Have Been Granted Relief under the First Step Act.

To avoid disparate sentencing, Mr. Burks points out that other defendants with CCE

convictions from the Eastern District of Virginia have been granted relief under the First Step

Act. *See, e.g.*, *United States v. Hall,* No. 2:93-cr-162-RAJ-1, ECF Dkt. 860, at 9-10 (E.D. Va.

Mar. 2, 2020). In *Hall*, United States District Judge Raymond A. Jackson ruled that a conviction

for CCE is a "covered offense" and concluded:

> Given the facts of this case, this Court holds that Petitioner's conviction for CCE is
> a "covered offense" under the FIRST STEP Act, not only because the provisions
> Petitioner was convicted under references §841 and § 846, but also because the
> essence of Petitioner's conviction under § 848 involved Petitioner's trafficking of
> crack cocaine.  The mere title of a statute does not prevent Petitioner's eligibility
> under the FIRST STEP Act where the object of Petitioner's offense was dealing in
> crack cocaine.  To hold otherwise would render the First Step Act useless where
> the goal of the act is to correct unjust sentences given to those who dealt with crack
> cocaine and who could not benefit from the changes to the federal sentencing
> scheme over the last two decades.

*Id*. at 10.  Mr. Burks respectfully requests that this Court consider the rationale and reasoning of

*Hall* and find him eligible for relief pursuant to the First Step Act.

### D.    Other District Courts Have Granted First Step Act Relief to Defendants with CCE Convictions Based on the CCE's Statutory Penalty Modifications.

Other District Courts have ruled that CCE is a "covered offense" under the First Step Act

because the statutory penalties for the CCE statute were modified by the Fair Sentencing Act.

Notably, the penalty provisions in § 848(b) and § 848(e) are explicitly tied to the threshold drug weights in 21 U.S.C. § 841(b)(l).

With respect to § 848(b), a defendant is subject to mandatory life in prison if "the violation referred to in subsection (c)(l) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title" and he is a principal administrator, organizer, or leader of the enterprise. Several courts have found defendants sentenced under this subsection eligible for reduced sentences under the First Step Act due to the modification of§ 841(b)(l)(B) by the Fair Sentencing Act. *See United States* v. *Moore,* 2020 WL 4748154, at \*\*2-3 (ND. Ill. Aug. 17, 2020); *United States* v. *Kelly,* No. 2:94-cr-163, ECF Doc. 1133, at 3-5 (E.D. Va. June 5, 2020): *United States* v. *Jimenez,* 2020 WL 2087748, at \*2 (S.D.N.Y Apr. 30, 2020); *United States* v. *Walker,* No. S:95-cr-101, ECF Doc. 620, at *5* (N.D.N.Y. Oct. 25, 2019); *see also United States* v. *Davis,* 2020 WL 1131147, at \*2 (W.D. Va. Mar. 9, 2020) (concluding that § 848(e)(l)(A) is covered offense because it requires a violation of § 841 punishable under § 84l(b)(l )(A)).

Similarly, because § 848(b) was effectively modified, courts have found that defendants sentenced under subsection§ 848 (a) are also eligible for sentence reductions. *See United States v. Brown,* 2020 WL 3106320, at \*\*2-4 (W.D. Va. June 11, 2020); *United States v. Dean,* 2020 WL 2526476, at \*\*2-3 (D. Minn. May 18, 2020).

Thus, CCE is a "covered offense" under the First Step Act for two reasons.  First, the CCE conviction in this case is predicated upon crack cocaine offenses—a covered offense under the First Step Act. Second, the CCE penalties were modified based upon the Fair Sentencing Act.

**V.   WHEN CONSIDERING SECTION 3553(a) FACTORS AND POST-SENTENCING FACTS, MR. BURKS HAS EARNED A SENTENCE REDUCTION.**

### A.   Mr. Burks's 2020 Guideline Calculations

Now, in 2020, sentencing would be much different for Mr. Burks than it was in 1994.  The guidelines are advisory based on *United States v. Booker*, 543 U.S. 220 (2005).   Additionally, a jury is required to determine a specific drug weight. *See e.g., Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Since 2008, there have been a series of Amendments and Acts that have attempted to remedy the harsh sentencing disparities between powder and crack cocaine offenses. Notably, had Mr. Burks been sentenced for powder cocaine offenses, he likely would not have been sentenced to life imprisonment, and he would have been released from prison many years ago. Now, the First Step Act provides defendants the opportunity to retroactively benefit from the Fair Sentencing Act and to remedy the harsh crack cocaine sentencing disparities for those who could not benefit from those prior Amendments and the Fair Sentencing Act.

Here, this Court has previously concluded that Mr. Burks's guideline range is based upon a total offense level 44, criminal history category II. Dkt. 121-6 at 7. However even if Mr. Burks's guideline range remains the same at Life, the guideline range still would be advisory, not mandatory. Moreover, the Fourth Circuit has held, the fact that the statutory range for a defendant's count of conviction would not have been different had the Fair Sentencing Act applied at the time his sentencing does not mean the defendant is ineligible for consideration under the First Step Act for a reduced sentence. *See United States v. Woodson,* 962 F.3d 812, 817 (4th Cir. 2020) (recognizing that "even defendants whose offenses remain within the same subsection after Section 2's amendments are eligible for relief' under First Step Act.").

Notably, if this Court considers the Government's prior endorsement of a 360-month sentence, Mr. Burks has over-served his time. As such, Mr. Burks respectfully requests that this Court resentence him to 360 months' imprisonment or time served.

### B.  Mr. Burks's History

Mr. Burks was only 25 years old when he was sentenced to spend the rest of his life in prison for crack cocaine offenses that occurred over a two to three-year period.  As discussed *supra,* and in the Letters of Support, Mr. Burks was so much more than the man portrayed at trial. In the 25 years before his life sentence, and still today, Mr. Burks is highly regarded as a brother, a son, a father, a friend, an excellent student with high academic honors, a talented athlete, a leader, a uniter, and a mentor.

It was only after the death of his mother that Mr. Burks acquired three criminal offenses within a six-month period after his mother passed away.  PSR ¶¶ 92-95. Prior to his life sentence, the longest sentence that Mr. Burks received was a nine-month sentence.

### C.  Mr. Burks's Post-Sentencing Conduct

Mr. Burks has now spent nearly three decades in federal prison, and he is now in his 50s. Mr. Burks has had no disciplinary actions in over eight years since 2013.  Mr. Burks has taken advantage of many BOP courses to better himself.  Mr. Burks has completed rehabilitation courses that have benefited him personally and helped him understand and correct the behaviors that led him down this path.  Additionally, he has completed numerous courses to help him achieve his goal of operating his own trucking business.

### D.  Mr. Burks's Release Plan

As demonstrated in his Letters of Support, Mr. Burks has stable support, offers of employment, offers of living arrangements, and familial support.  Although Mr. Burks's ultimate

goal is to obtain his Commercial Driver's License and open a trucking business, he understands that this will take time.  Mr. Burks would like to work with his friend, Terrence Brown, who is in the real estate investing business so that he has financial security and the funds to support himself while he obtains his CDL.

Until Mr. Burks can secure a residence of his own, Mr. Burks will live either with his sister, Robin, or accept Terrence Brown's offer to reside at one of Mr. Brown's investment/real estate properties. He is prepared to provide a home verification to the Probation Office when  directed by the Court.

Mr. Burks humbly asks to be released from federal prison to reunite with his family. And for the first time ever, Mr. Burks wants to be physically present in his son's life —the son who was born after his arrest for the underlying offenses. Mr. Burks still possesses the academic potential and drive for success that he possessed in his twenties, and he looks forward to achieving his professional goals.

## VI.  CONCLUSION

WHEREFORE the First Step Act grants the district court explicit discretion to reduce sentences imposed under the excessively-harsh penalty structure that Congress has now renounced. Defendant James Burks is eligible for a sentence reduction under Sections 404(b) of the First Step Act. Mr. Burks respectfully asks that this Court reduce his total term of imprisonment to 360 months or time served on Count Two.

Respectfully submitted,

**JAMES K. BURKS, JR.**


*/s/ Adam M. Carroll*
Adam M. Carroll, Esq.
Virginia State Bar Number 68017
Wolcott Rivers Gates
200 Bendix Road, Suite 200
Virginia Beach, VA 23452
Phone: (757) 497-6633
Fax: (757) 687-3655
acarroll@wolriv.com
*Local Counsel for James K. Burks*


/s/ MiAngel Cody
MiAngel Cody, Esq. *Pro Hac Vice pending*
Illinois Bar Number 6289243
The Decarceration Collective
1325 S. Wabash St., Ste 305
Chicago, IL 60605
(312) 858-8330
miangelcody@decarcerationlaw.com
*Lead Counsel for James K. Burks*


*/s/Tracy N. DaCruz*
Tracy N. DaCruz, Esq. *Pro Hac Vice pending*
Florida Bar Number 566098
The Decarceration Collective
2045 N. Biscayne Blvd, Ste 282
Miami, Florida 331347
(561) 559-1900
tracy@decarcerationlaw.com
*Lead Counsel for James K. Burks*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Adam M. Carroll, hereby certifies that on December 14, 2021, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT JAMES KIRBY BURKS JR.'S MOTION FOR A REDUCTION OF HIS HIS LIFE SENTENCE PURSUANT TO SECTION 404(b) OF THE FIRST STEP ACT**

<u>*/s/ Adam M. Carroll*</u>
Adam M. Carroll, Esq.
Virginia State Bar Number 68017
Wolcott Rivers Gates
200 Bendix Road, Suite 200
Virginia Beach, VA 23452
Phone: (757) 497-6633
Fax: (757) 687-3655
acarroll@wolriv.com
*Local Counsel for James K. Burks*

29