**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent,** | ) | |
| | ) | **Case No.** |
| | ) | **1:93-CR-00460-CMH-1** |
| **v.** | ) | |
| | ) | **Hon. Claude M. Hilton** |
| **JAMES KIRBY BURKS., Jr.,** | ) | |
| **Petitioner.** | ) | |

**DEFENDANT JAMES KIRBY BURKS, JR.'S**
**REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION**
<u>**TO DEENDANT'S MOTION FOR COMPASSIONAT RELEASE**</u>

> ***After reviewing the defendant's motion and underlying case file**, the United States would be willing to endorse a reduction in the defendant's sentence to one of less than life imprisonment, specifically, 360 months, were such a reduction permissible under law.*

Doc. 119 at 1, August 3, 2017 Response of the United States to Mr. Burks's June 8, 2016 § 3582(c)(2) Motion for Reduction of Sentence Based on Amendment 782 (emphasis supplied).

> *Burks's life sentence was not unusually long for his conduct **at the time** [in the 1990s] . . . Burks's life sentence is not unusually long for his conduct **according to today's standards**.*

Doc. 147 at 23, 24, April 24, 2024 United States' Response in Opposition to Defendant's Motion for Compassionate Release (emphasis supplied).

Defendant JAMES KIRBY BURKS, Jr., by and through undersigned counsel, respectfully replies to the Government's Response in Opposition to Compassionate Release (Doc. 147) as follows.

## 1.   INTRODUCTION AND BACKGROUND

The Government's Response is largely unresponsive.  The Government spends much of its responsive brief answering arguments that Mr. Burks did not make.  The Government focuses mostly on arguing whether the Sentencing Commission has exceeded its authority in creating USSG § 1B1.13(b)(6).  The Government also focuses on Mr. Burks's offense conduct and the drug quantity attributed from conduct—all conduct that the Government was aware of when it essentially told this Court in 2017 that a 360-month sentence would be appropriate for Mr. Burks. Doc. 119 at 1. Notably, the Government never discusses, or even mentions, its willingness to endorse a sentence reduction to 360-months in 2017.

Simply put, Mr. Burks's motion for compassionate release is properly before this Court for its consideration.  Before § 1B1.13(b)(6), the Supreme Court and the Fourth Circuit have already empowered district courts to consider gross sentencing disparities due to changes in law as an extraordinary and compelling reasons for compassionate release. *See United States v. Davis*, 2024 WL 162931 (4th Cir. Apr. 18, 2024) (reversing denial of motion for compassionate release and noting the district court did not have the benefit of the Sentencing Commission's guidance regarding § 1B1.13(b)(6) when it denied the motion, but noting **"[n]onetheless, the district court was [already] on notice that 'gross' disparities due to changes in law can be extraordinary and compelling reasons for compassionate release"** as instructed in *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)) (emphasis supplied); *Concepcion v. United States*, 142 S. Ct. 2389, 2405 (2022) ("a district court adjudicating a motion under the First Step Act may consider other intervening changes of law . . . or changes of fact . . . in adjudicating a First Step Act motion.").

In arguing that the Sentencing Commission exceeded its authority in creating § 1B1.13(b)(6), the Government is raising an argument that has been rejected by numerous district courts. The Government is ignoring Fourth Circuit and Supreme Court precedent in *McCoy*, *Davis,* and *Concepcion* that would still empower this Court to consider and grant compassionate release for Mr. Burks even if § 1B1.13(b)(6) was not a valid exercise of power by the Sentencing Commission.

Further, the Government fails to acknowledge or address the case before this Court that is similar to Mr. Burks's case and supports compassionate release: *United States v. Watkins*, 2023 WL 6491998 (4th Cir. Oct. 5, 2023) (EDVA 1:90-CR-00260-CMH-2)(instructing this Court that, because the sentencing package doctrine applies in First Step Act ("1SA") cases, this Court has the discretion to grant a 1SA sentence reduction where the defendant was convicted and sentenced based on § 404(b) covered offense (crack cocaine offense) and a non-covered offense (CCE)). Mr. Burks and the defendant in *Watkins* are two similarly situated defendants before this Honorable Court who were sentenced for crack cocaine convictions after being held accountable (pre *Apprendi*; pre-*Booker*) for over 50 kilograms of crack cocaine based on conduct. *United States v. Watkins* 1:90-CR-00260-CMH-2; Doc. 62 at 5 (Order noting that, "at most, Counts Four and Nine reference 50 grams of cocaine base [as charged], **not the 50 kilograms argued by Respondent**.") (emphasis supplied). Burks's and Watkins's Life sentences formed a sentencing package based on a CCE conviction and a crack cocaine conviction. Watkins has an opportunity at life outside prison walls, but Mr. Burks will die behind prison walls. This is because Mr. Burks's crack cocaine conviction was vacated on direct appeal, leaving intact a Life sentence for the CCE offense— although the Life CCE sentence still bore from and was formulated with a covered crack cocaine conviction.

3

As discussed at *infra* at pages 12-15, *United States v. Richardson*, 96 F.4th 659, 667 (4th Cir. 2024), a case decided *after* Mr. Burks filed his compassionate release motion, explains why the Fourth Circuit is providing district judges with "**the most flexibility** in determining whether counts function as a package and how to resentence those defendants eligible for a First Step Act reduction." *Id.* at 666- 667 (emphasis supplied).

*Davis*, *McCoy*, *Richardson*, *Concepcion*, and § 1B1.13(b)(6) provide a means for this Honorable Court to use compassionate release to reconsider Mr. Burks's CCE sentence where it originally formed a sentencing package with a § 404(b) covered offense. The cases and amendment further allow Mr. Burks to be similarly situated to Watkins and any other defendant who can now seek a 1SA reduction for their non-covered offense (including murder).

 For the reasons provided in his motion and herein, Mr. Burks humbly asks this Court to grant his motion.

## 2.  DISCUSSION

The Government opposes Mr. Burks's motion for three principal reasons: (A) the Government argues the Sentencing Commission exceeded its congressionally-delegated authority when it allowed district courts to consider non-retroactive statutory changes to be extraordinary and compelling; and (B), the Government argues Mr. Burks's sentence is not "unusually long" because it was an appropriate sentence "at the time" and  it is not a "gross disparity" based on the likely sentence he would receive today; and (C) Even if § 3553(a) factors support a reduction, relief is unavailable as a matter of law.   These arguments fail in turn.

A.        §1B1.13(b)(6)

The Government argues the Sentencing Commission exceeded its delegated authority when it amended USSG Section 1B1.13(6).  Numerous courts have rejected this argument, including, but not limited to, the following: *United States v. Skeeters*, No. 2:05-cr-00530-HB, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024); *United States v. Martinez*, No. 2:01-CR-00564-TC, 2024 WL 866822 (D. Utah Feb. 29, 2024); *United States v. Smith*, No. 4:99cr66-RH-MAF, 2024 WL 885045 (N.D. Fla. Feb. 20, 2024); *United States v. Conmy*, No. 2:05-cr-83-KJD-GWF, dkt. 211 (D. Nev. Feb.16, 2024); *United States v. Allen*, No. 1:09-cr-320-TCB, 2024 WL 631609 (N.D. Ga. Feb. 12, 2024); *United States v. Brown*, No. 2:95-CR-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024).

Moreover, Senators Dick Durbin and Cory Booker filed an amicus curiae brief concluding § 1B1.13(6) is a valid exercise of the Commission's authority.  *See United States v. Johnnie Markel Carter*, Third Circuit Court of Appeals Case Number 24-1115, Doc. 23 at 31.

Further supporting districts courts' decisions rejecting the Government's argument and Senators Durbin and Booker's amicus brief, Congress did not block the amendments.  On May 3, 2023, the Sentencing Commission submitted to Congress amendments to the Sentencing Guidelines, policy statements, and official commentary.  *See* 88 Fed. Reg. 28254, May 3, 2023.   Nearly 200 days elapsed between when the Sentencing Commission submitted its proposed amendments to Congress and when those amendments took effect.  If Congress believed the Commission had exceeded its delegated authority, then it could have blocked passage of the proposed amendments at any time between May 2023 and when the guidelines took effect on November 1, 2023. Congress chose not to do so.

The Supplement to Appendix C, which accompanied the November 1, 2023, Amendments, contains helpful commentary.  *See generally* Supplement to Appendix C at 200-210.  The Sentencing Commission's official commentary clearly states that subsections (b)(6) and (c) "operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons," and ultimately "authorize a district court to consider non-retroactive changes in law ...."  *Id*. at 208.   Specifically, in describing the addition of Subsection (b)(6), the Sentencing Commission stated that this new ground "permits a judge to consider a non-retroactive change in sentencing law as an extraordinary and compelling reason in specified circumstances."  *Id*. at 206.  Here too, Congress could have intervened between May and November 2023, had it believed the Commission exceeded its authority. Congress did not do so.

Mr. Burks presents a *guidelines* argument, not a statutory one. The Fourth Circuit has never held that district courts are precluded from considering non-retroactive **guidelines** changes as an extraordinary and compelling reason for § 3582(c) relief.

Additionally, the Fourth Circuit's recent decision in *United States v. Davis*, 2024 WL 1662931 (4th Cir. Apr. 18, 2024) suggests that the Fourth Circuit would reject the Government's argument that the § 1B1.13(b)(6) is invalid.  In *Davis*, the defendant moved for compassionate release, seeking to invalidate his career offender designation because a subsequent case after he was sentenced held that Virginia robbery did not constitute a violent felony under the ACCA.  *Id.* at *1.  He asserted that his release was justified under the § 3553(a) factors because the conduct underlying the offense of conviction was not particularly severe, he no longer posed a danger to the public, and he had completed several rehabilitation programs since his sentencing.  *Id*.  The

Government opposed the motion, arguing in part that Davis's change-in-law arguments were not cognizable as a justification for compassionate release. *Id.*

> In reversing, the Fourth Circuit instructed:
>
> Section 3582(c)(1)(A) requires a district court first to find "extraordinary and compelling reasons" warranting a sentence reduction. Then, after considering any appropriate § 3553(a) factors, the court must determine whether the requested reduction in sentence is consistent with "applicable policy statements issued by the Sentencing Commission." *Jenkins*, 22 F.4th at 169; *Kibble*, 992 F.3d at 330-32.
>
>              \*                    \*                    \*
>
> In May 2023, the Sentencing Commission, having finally achieved a quorum, promulgated amendments to U.S.S.G. § 1B1.13, the section that governs § 3582 and discusses the contours of "extraordinary and compelling" reasons. 88 Fed. Reg. 28254 (May 3, 2023) . . . .
>
> Further, the amendment provides that if a defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason." *Id*. However, this consideration only applies where such a change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." *Id*.
>
> **The district court did not have the benefit of the Sentencing Commission's guidance when it denied Davis's compassionate release motion. Nonetheless, the district court was on notice that "gross" sentencing disparities due to changes in law can be extraordinary and compelling reasons for compassionate release**.

*Id*. at \* 2-3 (emphasis supplied).

*Davis* instructs that district courts are empowered to the to use § 1B1.13(6) and the Sentencing Commission's guidance to grant compassionate release.  More importantly, Davis points out that before § 1B1.13((b)(6), the Fourth Circuit had already empowered courts to grant compassionate release based on a similar standard.  *Id.* at \* 3.  Prior to *Davis* and the amendments to § 1B1.13, the Fourth Circuit held that a district court may treat "the disparity of defendant's §

924(c) sentences and those provided under the First Step Act" as "extraordinary and compelling reasons for compassionate release."  *McCoy*, 981 F.3d at 285–86.  The Fourth Circuit explained that "*McCoy* indicated that disparities between nonretroactive, correctly calculated, pre-First Step Act sentences and the sentences defendants would have received post-First Step Act are properly considered as 'extraordinary and compelling' reasons." *Davis*, 2024 WL 1662931, at *4.  As the Fourth Circuit noted in *Davis*, "[t]ogether, *McCoy* and Section 3582(c) indicated that **changed legal circumstances may sometimes provide a basis for compassionate release**." (emphasis supplied).  *Id.* at *4.

Thus, without even addressing the Government's argument that the Sentencing Commission has exceeded its authority regarding §1B1.13(b)(6), *McCoy* previously and still empowers this Court to grant compassionate release in Mr. Burks's case.

Notwithstanding Fourth Circuit precedent, Mr. Burks's arguments fall squarely within the Supreme Court's holding in *Concepcion v. United States*, 142 S. Ct. 2389, 2405 (2022) ("a district court adjudicating a motion under the First Step Act may consider other intervening changes of law . . .  or changes of fact . . . in adjudicating a First Step Act motion.") *Id.*

The Government's Response runs afoul of the Supreme Court's unambiguous holding in *Concepcion* and Fourth Circuit precedent in *Davis* and *McCoy* that permits this Court to consider that "changed legal circumstances may sometimes provide a basis for compassionate release." *Davis*, 2024 WL 1662931 at *4.  As discussed in Mr. Burks's motion, numerous factors have collectively created extraordinary and compelling reasons for compassionate release. Doc. 142.

**B.**       **Unusually Long Sentence and Gross Disparities**

The Government makes the curious argument that Mr. Burks's Life sentence is neither "unusually long" based on his conduct "at the time" or today. Nor does his Life sentence represent a "gross disparity" with the likely sentence he would receive today.

1. <u>Unusually Long Sentence</u>

First, the Government contends Mr. Burks's sentence is not "unusually long" compared to his other non-cooperating co-defendants. Doc.147 at 23. However, Mr. Burks is the **only** defendant in the case who is currently serving a Life sentence. Indisputably, there is nothing longer than a Life sentence. The other three co-defendants who were sentenced to Life imprisonment received reduced sentences between 324 to 360 months' imprisonment as illustrated in the Government's chart. Doc. 147 at 6. Cooperating defendants received sentences between five years' probation to 78 months' imprisonment. Doc. 147 at 5.

Second, despite the whole purpose behind the crack cocaine guideline amendments, FSA, and 1SA to dismantle the unfair sentencing scheme, the Government even goes so far as to assert that Mr. Burks's Life sentence is not unusually long because it was not unusually long "for his conduct **at the time**." Doc.147 at 23 (emphasis supplied). The crack cocaine prosecutions and sentences "at the time" of Mr. Burks's conduct were the product of a racially disparate sentencing scheme that unfairly imposed harsh sentences for crack cocaine compared to powder cocaine offenses based on a 100:1 ratio that still today has not been fully remedied and equalized. That sentencing scheme warranted a Life sentence for Mr. Burks for a crack cocaine offense in 1994, and a significantly less sentence for a similarly situated defendant convicted of *powder* cocaine offenses. In 1994, Mr. Burks's conduct "at the time" would have required him to be accountable for at least 150+ kilograms of powder cocaine to receive the same Life sentence he still serves

today. And, after Amendment 784, he would have been eligible for a lower sentence than Life had he been accountable for over 150 kilograms of powder cocaine.

Third, the Government argues that Mr. Burks's Life sentence is not "unusually long" for his conduct according to today's standards.  Doc. 147 at 24.  Curiously, the Government does not explain its prior position concerning its willingness to endorse a 360-month sentence in 2017.  Doc. 119 at 1.  The Government points out that 25.2 kilograms of cocaine would still yield a base offense level 38.  Doc. 147 at 24.  Under today's standards, holding Mr. Burks accountable for 50 kilograms would not be determined by a judge or based on offense conduct gleaned from a PSR. Mr. Burks's Life sentence "at the time," is a relic of a bygone era of constitutional violations. Given the series of guideline amendments, the FSA, and the 1SA to dismantle the racially disparate prosecutions and sentencings "at the time" of Mr. Burks's sentence, Mr. Burks's Life sentence was "unusually long" at the time and certainly "unusually long" today.

The Government relies on a mere two cases to argue that Mr. Burks's Life sentence is not "unusually long" for his conduct: *United States v. Williams*, 2010 WL 1949593 and *United States v. Hall*, 681 Fed. App'x 793, 796 (11th Cir. 2017).  Both are inapplicable related to Mr. Burks's compassionate release motion where both cases were decided **before** the First Step Act.

*Williams* is a **2010** case.  Moreover, the defendant in *Williams* currently has compassionate release motion pending before the district court.  *See* WDNY Case Number 99-CR-2A at Doc. 1133.

 The Government next relies on *Hall* to claim the Eleventh Circuit upheld a Life sentence where the PSR attributed over 50 kilograms to the defendant.  Doc.147 at 25. However, the Government mistakenly asserts in *Hall* that the Eleventh Circuit upheld a Life sentence.  **It did not**.  The Eleventh Circuit explained in *Hall* that **the district court previously reduced Hall's**

**Life sentence to 360 months**.  *Hall*, 681 Fed. App'x at 795. It upheld the district court's decision to not further reduce Halls' 360-month sentence because Hall was not eligible for Amendment 784 relief.  *Id*. at 794.  Evidently, Hall was later released from prison based on his **reduced 360-month sentence**.  *See* MDFL Case Number 2:92-CR-00118-UA, Docs. 416 (Motion for Early Termination of Probation); 419 (Order Granting Early Termination of Probation). Thus, even in *Hall*, the district court ultimately determined a Life sentence was **not appropriate** for Hall who was accountable for over 50 kg of cocaine base.

As the Sentencing Commission observed, Life sentences in the federal system are rare.[1]  A Life sentence is even more rare in drug trafficking cases, "having been imposed in **less than one-third of one percent of all drug trafficking cases**."[2]  Although the Government contends that Mr. Burks's maximum sentence is still Life based on his quantity (Doc.147 at 24), statistics reveal a **maximum Life sentence** would not be imposed today.  Further, a jury, not a judge, would make quantity findings.

2.  <u>Gross Disparity</u>

Next, the Government contends that there are no changes in law that create a gross disparity in Mr. Burks's case. First, the Government argues that, because Mr. Burks's crack cocaine offense was vacated on appeal, he is ineligible for a § 404(b) motion.  Doc. 147 at 27.  The Government continues that Mr. Burks's sentence "does not appear to function as a package."  Doc. 147 at 27.

---

[1]      U.S. Sent'g Comm'n: *Life Sentences in the Federal Criminal Justice System*, available at: https://www.ussc.gov/research/research-publications/life-sentences-federal-criminal-justice-system#:~:text=Life%20imprisonment%20sentences%20are%20rare,to%20their%20country%20of%20origin. (last accessed .April 24, 2024).

[2]      *Id*. at p.4.

While the Government asserts that Mr. Burks is ineligible for a § 404(b) Motion, Mr. Burks is **not** moving for § 404(b) relief in his Motion for Compassionate Release pursuant to § 603. As Mr. Burks asserted in his motion, compassionate release creates a path to relief without this Court having to rule on his eligibility for § 404(b) relief. Doc. 142 at 8. Compassionate release is a means to provide otherwise available relief for other defendants where Mr. Burks's CCE Life sentence bore from and formed a package with a vacated § 404(b) covered crack cocaine offense.

The Government's contention that Mr. Burks' CCE sentence does not appear to form a package also fails. In a case decided *after* Mr. Burks filed his compassionate release motion, the Fourth Circuit provided insightful guidance and encouraged district courts to revisit non-covered offenses that formed a sentencing package. *See United States v. Richardson*, 96 F.4th 659 (4th Cir. 2024). *Richardson* is additional intervening law that provides further support that this Court can and should revisit Mr. Burks's CCE conviction if it formed a sentencing package with a covered § 404(b) offense.

In *Richardson*, a jury convicted Richardson of multiple counts including CCE, crack cocaine, and money laundering offenses. *Id*. at 662. Based on his drug weights, his base offense level was 38. *Id*. Richardson received two points for possessing a dangerous weapon in furtherance of the drug trafficking offense, a four-point enhancement for his leadership role in the conspiracy, and two two-point enhancements for obstructing justice. *Id.*. Richardson's CCE count yielded the same offense level because of the way § 2D1.5, the Guideline for CCE offenses, interacts with § 2D1.1.2. *Id*. The drug and CCE offenses were grouped together. *Id.* at 669. Ultimately, the district court sentenced Richardson to concurrent Life sentences on the CCE count and the drug count. *Id*. at 663.

12

Despite the district court initially declining to grant a 1SA reduction because Richardson was the organizer of a conspiracy, and his offense involved "not just drugs, but a long series of violent acts, including assaulting people, shooting people, threatening them, and offering money to kill a witness," the court later concluded a 360-month sentence was appropriate for Richardson's crack cocaine convictions. *Id.* at 663-664. However, the court believed it could not reduce Richardson's CCE conviction, a non-covered offense. *Id.* at 664. In reversing based upon its recent precedent that the sentencing package doctrine applies to 1SA cases, the Fourth Circuit provided insightful guidance regarding the importance of assessing non-covered offenses for 1SA relief when the non-covered offense formed a sentencing package with a covered offense:

> Allowing judges to utilize the sentencing package doctrine is in line with how district judges practically sentence defendants and in accordance with the purpose of the First Step Act.
>
>     *        *        *
>
> **[T]he sentencing package doctrine is applicable here because where one count of a package is remanded, the district judge must be given the discretion to reconfigure the sentencing plan to ensure it remains adequate to satisfy the statutory sentencing factors**.
>
>     *        *        *
>
> **Acknowledging district judges' discretion satisfies the purpose of the First Step Act, which is to "ensure greater justice for those subject to a racially disparate sentencing scheme."** *United States v. Swain*, 49 F.4th 398, 401 (4th Cir. 2022). **Allowing district judges to resentence interconnected charges furthers the purpose of the Act and gives district judges the flexibility to tailor a defendant's sentence holistically based on the new statutory scheme.**
>
> There is textual support for allowing a sentence reduction based on the sentencing package doctrine. While there are disagreements within the circuits on this issue, we agree with the reasoning of the Seventh Circuit that the First Step Act does not exclude noncovered offenses because doing so would impose an "extra-textual limitation" since the statute did not constrain its application to grouped and noncovered offenses. *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020). While our sister circuits have different approaches in how the sentencing package doctrine applies to the First Step Act, **we align with the approach that gives district judges the most flexibility in determining whether the counts function as a package, and how to resentence those defendants eligible for a First Step Act reduction**.

*Id.* at 666-667.  In remanding, the Fourth Circuit advised:

> On remand, the district court might consider whether the noncovered offenses represent a freestanding and distinct sentence from that of the covered offenses, or whether the sentence reflects an attempt to achieve an overall sentence without regard to the component parts.

*Id*. at 669. The Court  cited another example of why the sentencing package likely applied:

> [T]he CCE and distribution offenses were grouped together under the Guidelines for sentencing purposes, a factor other courts have relied on in applying the sentencing package doctrine. *See Curtis*, 66 F.4th at 694-95 (noting that grouping for sentencing is "perhaps the most common way [ ] to show interdependence," though there "could be other indicia in the record").

*Id*. at 669.

Like *Richardson*, Mr. Burks was charged in an indictment with a crack cocaine offense and CCE involving the crack cocaine offense.  A jury convicted Mr. Burks of the CCE and crack cocaine offenses.  Like *Richardson*, Mr. Burks's CCE count yielded the same offense level because of the way § 2D1.5, the Guideline for CCE offenses, interacts with § 2D1.1.2.  *See* PSR Worksheet, Doc. 121-1 at 23-24.  Like *Richardson*, Mr. Burks's drug and CCE count were grouped.  Doc. 121-1 at 25.  Like *Richardson*, the Court sentenced Mr. Burks to concurrent Life sentences on the drug count and the CCE count.  Doc. 121-2 at 6.  Given the guidance set forth in Richardson, and because Mr. Burks's CCE and drug offenses were grouped, Mr. Burks's CCE conviction formed a sentencing package with the crack cocaine offense.

As instructed by *Richardson*, where Mr. Burks's crack cocaine offense was vacated on appeal, this Court should have the discretion to reconsider Mr. Burks's CCE sentence by "reconfigure[ing] the sentencing plan to ensure it remains adequate to satisfy the statutory sentencing factors" to ensure the CCE sentence "satisfies the purpose of the First Step Act, which is to "ensure greater justice for those subject to a racially disparate sentencing scheme." *Id*. at 666-667.  Where the Fourth Circuit has emphasized that it "align[s] with the approach that gives district

14

judges the most flexibility in determining whether the counts function as a package, and how to resentence those defendants eligible for a First Step Act reduction," Mr. Burks asks this Honorable Court to use compassionate release to resentence Mr. Burks accordingly.

Second, the Government contends that the Fourth Circuit and Supreme Court has not settled whether district courts may consider *Booker* as a factor in the extraordinary and compelling analysis. However, other district courts have granted compassionate release based upon *Booker*. *United States v. Vargas*, 502 F. Supp. 3d 820, 825 (S.D.N.Y. 2020)(granting compassionate release because, in light of *Booker*, "it is difficult to escape the conclusion that [the sentence imposed] is both draconian and exceptionally harsh"); *United States v. Clark*, No. 97-CR-00817, 2021 WL 1066628, at *3 (S.D.N.Y. Mar. 18, 2021) (granting compassionate release because the pre-*Booker* mandatory guidelines "provided for an exceptionally long sentence for his crimes, ranging from 360 months to life" and concluding "a life sentence was uncalled for"); *United States v. Favela*, No. 1:94-cr-05044-DAD-1, 2022 WL 4450496 at * 11 (E.D. Cal. Sept. 23, 2022); *United States v. Parker*, 461 F. Supp. 3d 966, 981 (C.D. Cal. 2020).

Mr. Burks is serving Life in prison, pursuant to a judgment rendered under a sentencing regime that is no longer in effect and has since been declared unconstitutional. There is nothing in the legislative history of the First Step Act, the Sentencing Reform Act, or the Commission's subsequent policy statements that forecloses this Court from considering that fact when weighing compelling reasons for a reduction under amended 1B1.13(b)(6). And, certainly, the catchall provision of USSG § 1B1.13(b)(5) authorizes this Court to consider the fact that Mr. Burks's Life sentence was based upon a bygone unconstitutional, mandatory guidelines era.

The Government further contends that, even after *Booker*, a Life sentence would still be appropriate because Mr. Burks's guideline sentence would still be Life. Doc. 147 at 28. The

Government also asserts that his offense conduct and drug quantities justify "a lengthy sentence even under an advisory guideline regime." Doc. 147 at 28. Again, the Government was aware of Mr. Burks's drug quantities and offense conduct when it was willing to endorse a sentence reduction to 360 months. Even assuming Mr. Burks's offense justifies a "lengthy sentence," it does not justify a Life sentence.

As Mr. Burks pointed out in his motion, courts within the Fourth Circuit have granted 1SA motions related to Life sentences for persons with non-covered offenses **involving murder** to an average of 360 months**.** Doc. 142 at 15-17. In Response to the Government's assertion that a Life sentence is appropriate because of Mr. Burks's drug trafficking and firearm offenses, Mr. Burks relies on *DeSanges* that was discussed in his motion. Doc. 142 at 15-16; *See United States v. DeSanges,* 2023 WL 3309876 (W.D.Va. May 8, 2023) (acknowledging that defendant committed a heinous murder, but granting a sentence reduction to 450 months for a defendant who was convicted and sentenced to Life for: intentionally killing the victim while engaging in a conspiracy to distribute cocaine base; carrying a firearm that caused the death of a victim; drug conspiracy; and using a carrying a firearm while drug trafficking). Moreover, in *Richardson*, the district court sought to reduce Mr. Richardson's sentence, and the Fourth Circuit encouraged it to use the sentencing package to reduce his CCE conviction where Richardson was the organizer of a conspiracy, and his offense involved "not just drugs, but a long series of violent acts, including assaulting people, shooting people, threatening them, and offering money to kill a witness." 96 F.4th at 663-664; 666-667.

Mr. Burks simply asks this Court to extend the same consideration of a second chance at life outside prison walls for him.

**(C)**         **§ 3553(a) Factors Support Relief**

Finally, the Government contends that the § 3553(a) factors yields "mixed results," and again cites to Mr. Burks's offense conduct.  However, the Government previously noting its willingness to endorse a sentence reduction from Life to 360 months demonstrates that 30 years **maximum** is a sufficient sentence to reflect the seriousness of Mr. Burks's offense, promote respect for the law, and provide just punishment for the offense and afford adequate deterrence to criminal conduct.

As discussed throughout his motion and demonstrated in his Letters of Support, Mr. Burks has stable support of family and friends, offers of employment, and offers of living arrangements. Even the Government acknowledges that, "[t]he letters of support in his filings indicate the possibility of a second chance without re-offense, with the help of a social network that he seems to have maintained even during his period of incarceration." Doc. 147 at 31.  Many of those Letters of Support come from friends and teachers who have known Mr. Burks since he was in high school. Even now, after Mr. Burks has spent nearly 30 years in prison, the Letters of Support demonstrate the remarkable impression he left upon these people decades ago, and they still believe he can be an asset to his community.

Next, the Government acknowledges that Mr. Burks had significant disciplinary challenges during his first decade of incarceration but has had a relatively clean disciplinary record during the last ten years with only two low-level infractions.  Doc. 147 at 30.  Mr. Burks was in his mid-twenties when he was sentenced to Life in prison, and during his first decade of prison.  As he has aged, he has matured.  Therefore, in the past nine years, Mr. Burks has been almost infraction free. At 56 years old, and after spending 30 years in prison, Mr. Burks does not pose a threat to society, and the likelihood of recidivism is low.

The Government also claims that Mr. Burks has participated in limited education programs while in prison. Doc. 147 at 30. The Government has divided its claimed 135 hours of "coursework" over his 30-year sentence to argue he has averaged less than 5 hours for year "for betterment." *Id*. As discussed in his motion, and even in his PSR, Mr. Burks graduated high school with honors. He excelled in academics and sports. His academic record afforded him the opportunity to attend Howard University, and he went on to pursue his academic and athletic talents at Bakersfield State until his mother died. As discussed in his Section 404(b) motion, Mr. Burks has participated in numerous programs for his betterment considering his Life sentence. Doc. 137 at 14-15 and Exhibit B. As the Fourth Circuit has observed in similar circumstances, efforts toward rehabilitation made in the face of a Life sentence are particularly notable. *See United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019). Mr. Burks's participation in programs, notwithstanding the likelihood that he would never be released from prison, provides additional insight into his history and characteristics.

Next, the Government contends that, as to unwarranted sentencing disparities, none of his co-defendants were similarly situated where most were tied to smaller drug quantities. Doc. 147 at 31. The Government's assertion is the most enlightening where co-defendants *in this conspiracy* were tied to much smaller quantities, but it continues to emphasize Mr. Burks was accountable for 50 kilograms of cocaine base—a finding based on alleged conduct and not determined by a jury. Out of the over 20 co-defendants in this *conspiracy*, **Mr. Burks is the only defendant still serving a Life sentence**. Even the co-defendants who did not cooperate were originally sentenced to or ultimately received sentences between 324 to 360 months' imprisonment.

Finally, the Government argues that, even if the § 3553(a) factors supported a reduction, Mr. Burks has not established an extraordinary and compelling reason for release that would make

him eligible for relief.  However, the Government ignores the one case that Mr. Burks repeatedly relied upon in his Motion: *United States v. Watkins* (1:90-CR-00260-CMH-2) that is before this Court.  This Honorable Court has before it two similar cases:  Mr. Burks's case and *United States v. Watkins* (1:90-CR-00260-CMH-2).  Similarly, Mr. Burks and Watkins were held accountable for 50 kg based on amounts attributed through conduct.  Both were charged by Indictment only with intent to distribute 50 grams or more of cocaine base.

In EDVA Case Number 1:90-CR-00260-CMH-2, Watkins moved for 1SA relief.  The Government argued that Watkins was not eligible for 1SA relief due to his drug quantity.  However, relying on *Wirsing*, this Court noted it was only concerned about the **charged** amount, and not the amount attributed through conduct. Doc. 62 at 4-5.  This Court noted, that "at most, Counts Four and Nine reference 50 grams of cocaine base, **not the 50 kilograms argued by Respondent**."  Doc. 62 at 5.  This Court concluded: "Petitioner is correct that he is not ineligible for a reduced sentence based on the drug quantity thresholds in the Fair Sentencing Act." Doc. 62 at 5.  However, in denying Mr. Watkins 1SA relief and analyzing whether the CCE is a covered offense, this Honorable Court stated, "Because Petitioner's life sentence was not based on a 'covered offense' under the First Step Act, he is **unfortunately** ineligible for a sentence reduction." 1:90-CR-260, ECF # 62 at 5 (emphasis supplied).

The Government apparently abandoned any argument related to Watkins's 1SA eligibility based on the 50kg drug amount during Watkins's appeal, and ultimately conceded the sentencing package doctrine applies for 1SA relief.  *Watkins*, 2023 WL 6491998 at * 1-2. Based on the Government's concession, the Fourth Circuit reversed and remanded that order in Mr. Watkins's case instructing that this Court can apply the sentencing package to reduce Mr. Watkins' sentence. *Id.*

19

What stands between Mr. Burks pursuing the same path for relief the Fourth Circuit has encouraged in *Watkins* and *Richardson* is that his vacated crack cocaine conviction has left only Mr. Burks's CCE sentence from the package intact. *McCoy*, *Davis*, and § 1B1.13(b)(6) provide a path for similar relief for Mr. Burks to allow this Court, through compassionate release, to use the guidance of *Watkins* and *Richardson* to reconsider Mr. Burks's CCE sentence that formed a package with his § 404(b) covered crack cocaine offense. Mr. Burks's case is an extraordinary circumstance where he will die behind prison walls and Watkins has a chance outside prison walls although both their Life sentences originated from a sentencing package for CCE and crack cocaine offenses. Mr. Burks's case is especially compelling because the Government previously endorsed a sentence reduction to 360 months' imprisonment.

## CONCLUSION:

Mr. Burks is not beyond redemption and rehabilitation. He humbly asks this Court to use the legal mechanism before it—compassionate release—to reduce his sentence to 360-months (now time served)—the sentence the Government was willing to endorse seven years ago.

Respectfully submitted,

_____/s/_____
Brian M. Latuga, Esq.
VSB# 86300
Wolcott Rivers Gates
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Phone: (757) 687-3657
Fax: 757-497-7267
blatuga@wolriv.com
*Local Counsel to James Burks*

_____/s/_____
MiAngel C. Cody, Esq. *Pro Hac Vice*
Illinois Bar Number 6289243
The Decarceration Collective
1325 S. Wabash St., Ste 305
Chicago, Illinois 60605
Phone: (312) 858-8330
Fax: (312) 626-4823
miangelcody@decarcerationlaw.com
*Attorney to James Burks (Pro Hac Vice)*

_____/s/_____
Tracy N. DaCruz, Esq. *Pro Hac Vice*
Florida Bar Number 566098
The Decarceration Collective
1325 S. Wabash St, Ste 305
Chicago, Illinois 60605
Phone: (312) 858-8330
Fax: (312) 626-4823
tracy@decarcerationlaw.com
*Attorney to James Burks (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

The undersigned, Brian M. Latuga, an attorney with Wolcott Rivers Gates, 200 Bendix Road, Suite 300, Virginia Beach, VA 23452, hereby certifies that on April 24, 2024, I electronically filed the following with the Clerk of the Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record:

DEFENDANT JAMES KIRBY BURKS, JR's REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE.

*/s/ Brian M. Latuga*
Brian M. Latuga, Esq.
VSB#  86300
Wolcott Rivers Gates
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Phone: (757) 687-3657
Fax: 757-497-7267
blatuga@wolriv.com
*Local Counsel to James Burks*